# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

AMY R. GURVEY,

                                              Plaintiff,

        vs.

LEGEND FILMS, INC., formerly known as
Legend Films, LLC; JEFFREY B. YAPP;
DAVID G. MARTIN; and BARRY B.
SANDREW,

                                              Defendants.

CASE NO. 09-CV-942 - IEG (JMA)

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS

[Doc. No. 8]

Currently before the Court is Defendants' Motion to Dismiss the complaint. [Doc. No. 8]. Having considered the parties' arguments, and for the reasons stated herein, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

## BACKGROUND

**I.      The Parties**

Plaintiff, Amy Gurvey, is an attorney licensed to practice in the states of California and New York with experience and training in entertainment and intellectual property law. She was a resident of New York until 2002, at which time she moved her residence to New Jersey. Gurvey performed legal services for Defendant Legend Films, Inc. as well as individual Defendants between 2000 and 2002.

Defendant Legend Films, Inc. ("Legend") is a San Diego-based company specializing in the restoration and colorization of old black-and-white films and television shows for DVD, HDTV, and theatrical release. Legend Films, LLC ("LLC"), the predecessor to Legend, was formed in 2001 by Defendants Yapp and Sandrew,[1] and was incorporated in Nevada. In 2003, Legend was incorporated in California, and the LCC ceased to exist.

Defendant Barry Sandrew, Ph.D., is a California resident, and is currently serving as President and Chief Operating Officer of Legend. Sandrew is the inventor of an all-digital process for colorizing black and white films.

Defendant Jeffrey Yapp is currently a California resident and serves as Chairman of Legend's Board of Directors. In 2001, when the LLC was formed, Yapp was a resident of Oregon. Subsequently, in 2001, Yapp began working for Cablevision Systems Corporation ("Cablevision") in New York. In late 2002, Yapp moved from Oregon to New York, where he remained until early 2006.[2]

Defendant David Martin, a California resident, is Legend's Chief Executive Officer and a member of the company's Board of Directors.

**II.    Factual Background**

In late 1999, Plaintiff began performing legal services for Defendants Sandrew and Yapp in connection with breach of fiduciary duty claims against certain board members of the American Film Technologies, Inc. ("AFT"). At that time, both Sandrew and Yapp were AFT board members.

Sandrew and Yapp resigned from AFT on November 7, 2000. At that time, Plaintiff was working on various projects for Sandrew, including review of patents, contracts, and employment agreements pertaining to Sandrew and potential outsourcing companies. Plaintiff continued providing legal services to Yapp and Sandrew, and allegedly at their request also began providing legal services to Legend. Plaintiff's "General Counsel" services included aid in: formation of the company, drafting and reviewing contracts, proposals to film studios, intellectual property issues, and capital-raising

---

[1] According to Gurvey, Defendant Martin also participated in the formation of the LLC.

[2] According to Yapp, at about the same time that he moved to New York, he was replaced by Defendant Martin as the CEO of the LLC.

activities. At all relevant times, Legend allegedly held Plaintiff out to the public (e.g., in its prospectus, business plan, and executive summary) as its General Counsel and part of its management team.

On November 15, 2001, Plaintiff allegedly entered into an Employment Agreement (the "Agreement") with the LLC to serve as the company's General Counsel. The Agreement was for an initial term of two years commencing January 1, 2002, with an annual base salary of $125,000 plus other renumeration and benefits, including an ownership stake in Legend. The Agreement also contained a provision that Plaintiff could only be terminated upon ninety days prior written notice with a reasonable opportunity to cure any alleged failure to perform. Additionally, upon termination Plaintiff would be entitled to salary, accrued time off, earned bonuses, stock options, and deferred compensation. Any termination without cause would obligate Legend to pay Plaintiff $100,000 as severance. Finally, the Agreement allegedly contained a "Choice of Law/Forum" clause providing:

> This Agreement is to be construed and enforced in accordance with the laws of the State of New York, irrespective of the principles of conflicts of law. Any action brought pursuant to this Agreement must be instituted in the federal or state courts of the State of New York.

(Employment Agreement attached to Sandrew Decl., Ex. A, ¶ 10 (June 25, 2009).)

Although Plaintiff's complaint appears to assert that the alleged Agreement was signed by both parties, that does not seem to be the case. Defendants have included a copy of the "proposed" version of the Agreement with their Motion to Dismiss, which they allege has been supplied by Gurvey and was never signed by Legend or any of its employees. In her opposition to Defendants' motion to dismiss, Gurvey concedes that the Agreement was never signed. However, she continues to maintain that a valid "contract" existed between the parties.[3]

In February of 2002, shortly after entering into the Agreement, Plaintiff joined the law firm of Cowan, Liebowitz, & Latlaw, P.C. ("Cowan") in an "of counsel" capacity. Under her employment contract with Cowan, however, Plaintiff was permitted to continue working as general counsel to Legend, and Cowan held no rights to her 3% stock interest in Legend.

---

[3] According to Gurvey, "Although the parties never signed a contract, there was a meeting of the minds about the terms of the contract and plaintiff had in fact performed under, and in reliance upon the contract. The meeting of the minds on the terms is reflected in various documents none of which were ever signed by both parties." (Pl. Opp. to Def. MTD at 4-5.)

1   Gurvey claims that she continued to perform legal services for Legend through October of

2   2002. In November of 2002, Mr. Yapp allegedly informed her by phone she was to be terminated

3   without cause. Since then, Yapp has allegedly admitted that the company terminated Plaintiff because

4   it lacked funds to pay her. In September of 2008, however, it was reported that Legend had

5   successfully raised $13 million in venture capital funding.

6   Plaintiff now claims she still has not been paid the $125,000 salary, stock interest, and

7   $100,000 severance owed to her under the Agreement, as well as for services rendered to individual

8   Defendants prior to the formation of the LLC. Mr. Yapp allegedly made repeated representations to

9   Plaintiff that she would be paid under the Agreement that never came to fruition.  Moreover, in 2005,

10   in order to dissuade Plaintiff from filing suit for breach of contract, Defendants allegedly offered

11   Plaintiff 40,000 shares of Legend stock but did not provide Plaintiff's requested due diligence

12   documentation, so she was never able to ascertain the value of the offered shares.

13   **III.    Procedural Background**

14   Plaintiff brought the instant action in the United States District Court for the Southern District

15   of New York on October 29, 2008. The complaint alleges two separate claims for quantum meruit,

16   as well as claims for breach of contract, promissory estoppel, and specific performance. On December

17   8, 2008, Defendants moved to dismiss the complaint for lack of personal jurisdiction or, in the

18   alternative, to transfer the case. Before the New York court could rule on the motion, however, the

19   parties stipulated to the transfer of the action to the United States District Court for the Southern

20   District of California. The case was transferred to this Court on May 1, 2009. [Doc. No. 1].

21   Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on June 25,

22   2009. Plaintiff has filed an opposition and Defendants have filed a reply. Subsequently, the Court

23   ordered supplemental briefing concerning (1) whether New York court could exercise personal

24   jurisdiction over Defendants, and (2) if there was no personal jurisdiction in New York, whether any

25   objection to that was waived by Defendants. [Doc. No. 20]. Following the Court's order, Plaintiff filed

26   a supplemental brief, which was followed by Defendants' opposition, and Plaintiff's reply. Finally,

27   the Court heard oral argument on Defendants' motion on October 26, 2009.

28   //

1

**DISCUSSION**

2     Defendants' motion rests primarily on two grounds: (1) that all of Gurvey's claims are barred

3  by the applicable California statutes of limitation, and (2) that individual Defendants cannot be held

4  responsible under a corporate contract.

5  **I.     Legal standard for motion to dismiss**

6     This case presents an intertwined issue of statute of limitations and choice of law questions

7  brought at a motion to dismiss stage. Normally, a complaint survives a motion to dismiss under Fed.

8  R. Civ. P. 12(b)(6) if it contains "enough facts to state a claim to relief that is plausible on its face."

9  Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007). The court only reviews the contents of the

10 complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of

11 the nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citing Newcal Indus.,

12 Inc. v. Ikon Office Solution, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008)).

13    Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal,

14 --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff]

15 can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State

16 Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded

17 factual allegations, a court should assume their veracity and then determine whether they plausibly

18 give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

19    Thus, in the present case, the Court must determine "whether 'the running of the statute [of

20 limitations] is apparent on the face of the complaint.'" Huynh v. Chase Manhattan Bank, 465 F.3d

21 992, 997 (9th Cir. 2006) (citations omitted). "[A] complaint cannot be dismissed unless it appears

22 beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the

23 claim." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995). In analyzing

24 whether plaintiff's claims are time-barred, the court follows the following analytical framework:

25        "First, the Court must decide what choice-of-law rule governs the selection of the
          statute of limitations. Second, the Court must apply that rule to determine which
26        jurisdiction's limitations law applies. Third, and finally, the Court [must] determine
          whether plaintiffs' claims fall within the relevant limitations period."
27
   Huynh, 465 F.3d at 997 (citation omitted).
28
          //

1    **II.    Choice-of-law**

2         A.    Legal standard

3         A federal court sitting in diversity jurisdiction typically applies the substantive law of the

4    forum state, including its choice-of-law rules. Ferens v. John Deere Co., 494 U.S. 516, 524-25 (1990);

5    Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Muldoon v. Tropitone Furniture Co., 1 F.3d 964 (9th

6    Cir. 1993). However, when an action is transferred from one district to another under 28 U.S.C. §

7    1404(a), the transferee court applies the law of the forum (the "transferor court") in which the action

8    was originally filed.[4] Ferens, 494 U.S. at 524-26; Van Dusen v. Barrack, 376 U.S. 612, 637-39 (1964);

9    Muldoon, 1 F.3d at 965-66. Thus, "[a] change of venue under § 1404(a) generally should be, with

10   respect to state law, but a change of courtrooms." Van Dusen, 376 U.S. at 639.

11        The foregoing analysis assumes, however, that the transfer under Section 1404(a) was proper

12   "[f]or the convenience of parties and witness" and "in the interest of justice." Muldoon, 1 F.3d at 966-

13   67. The Ninth Circuit distinguishes "between cases so transferred and those transferred under §§

14   1404(a) or 1406(a) to cure a lack of personal jurisdiction in the transferor district."[5] Id. at 967 (citing

15   Nelson v. Intl. Paint Co., 716 F.2d 640, 643 (9th Cir. 1983)). As to the latter, the law of the transferee

16   district, including its choice-of-law rules, is applicable." Id. (citations omitted).

17        B.    Choice-of-law provision in the contract

18        As a preliminary matter, however, the Court must decide whether the choice of law provision

19   in the alleged Agreement controls the determination of the applicable law. Both California and New

20   York courts would enforce a valid choice-of-law provision, as long as it was entered into freely and

21   voluntarily. See Nedlloyd Lines B.V. v. Sup. Ct., 3 Cal. 4th 459, 464-65 (1992); Welsbach Elec. Corp.

22   v. MasTec North America, Inc., 7 N.Y.3d 624, 629 (2006). Notably, however, a choice-of-law

---

23   
24        [4] 28 U.S.C. § 1404(a) is titled "**change of venue**" and provides:

25        For the convenience of parties and witnesses, in the interest of justice, a district court
          may transfer any civil action to any other district or division where it might have been
26        brought.

27        [5] 28 U.S.C. § 1406(a) is titled "**cure or waiver of defects**" and provides:

28        The district court of a district in which is filed a case laying venue in the wrong
          division or district shall dismiss, or if it be in the interest of justice, transfer such case
          to any district or division in which it could have been brought.

provision will not be enforced where "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or "the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

In the present case, Plaintiff appears to have abandoned her reliance on the alleged Agreement as the source of an *express* choice-of-law provision providing for the application of New York law. (See Pl. Opp. to Def. MTD at 1 n.1.) In her opposition, Plaintiff concedes that "the parties never signed a contract." (Id. at 4.) Rather, according to Plaintiff, "there was a meeting of the minds about the terms of the contract and plaintiff had in fact performed under, and in reliance upon the contract." (Id.) Based on this, Defendants contend that Plaintiff has effectively waived any reliance on the alleged choice-of-law provision as the basis for application of New York law. (See Def. MTD at 1-2, 8.)

Accordingly, the Court concludes there is no express contractual "choice of law / forum" provision binding the parties. Moreover, the Court finds that Plaintiff has not alleged sufficient facts to support a claim that any *implied* or *oral* "contract" that might have existed between the parties contained a choice-of-law provision. Although a court must assume as true the factual allegations in the complaint, it is improper for the court to assume "the [plaintiff] can prove facts that [she] has not alleged." Assoc. Gen. Contractors of Cal., Inc., 459 U.S. at 526. In the present case, Plaintiff's Complaint initially provided a misleading impression that the "contract" referred to and quoted from by Plaintiff was a signed agreement between the parties. Defendants' Motion to Dismiss has shown that not to be true. In her opposition, Plaintiff does not dispute that and, most importantly, makes no argument that any implied or oral "contract" contained the disputed choice-of-law clause. Accordingly, because there are no factual allegations to support such a claim, the Court concludes that no valid choice-of-law provision governs this case.

C.    Personal jurisdiction over Defendants in New York

Next, to determine whether this Court should apply the choice of law rules of the transferor

court (*New York*) or the transferee court (*California*), the Court must determine whether the transfer was effected to cure lack of personal jurisdiction over Defendants by the New York court. See Muldoon, 1 F.3d at 965-67. In the present case, parties disagree as to the basis of the transfer. Plaintiff argues that personal jurisdiction was proper in New York, and thus New York choice-of-law rules should apply. (Pl. Opp. to Def. MTD at 7.) Defendants, on the other hand, argue that the transfer was effected "to cure jurisdictional defects," and thus California choice-of-law rules should apply. (Def. MTD at 3-5.) The stipulation, approved by the New York court, fails to add any clarity. It reads, in its entirety, as follows:

> It is hereby stipulated, subject to the order of this Court, that this action shall be transferred for all purposes to the United States District Court for the Southern District of California. The parties' stipulation shall be without prejudice to all claims and defenses of the parties as they existed at the time of the filing of the action in this Court.

> Upon entry of this Stipulation and Order, the clerk of this court shall take all necessary steps to transfer this action to the United States District Court for the Southern District of California.

(Decl. of Adelizzi in Support of Def. Supp. Mem. of P. & A. in Support of MTD, Ex. I.)

### *1.     Statutory bases for jurisdiction*

#### *a.     Legal standard*

A federal court sitting in diversity applies the personal jurisdiction rules of the forum state. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). However, where a transferor court has not ruled on the propriety of venue and jurisdiction, "the transferee court must determine whether venue and jurisdiction would have been proper in the transferor court in order to decide which forum state's law will apply under Erie." Davis v. Costa-Gavras, 580 F. Supp. 1082, 1086 (S.D.N.Y. 1984) (citing Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 992-93 (11th Cir. 1982); Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1107 (5th Cir. 1981); and Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980)). Thus, in the present case, the Court must apply the personal jurisdiction laws of New York to determine whether the New York court had personal jurisdiction over Defendants.

In assessing whether personal jurisdiction is proper, "the court must look first to the long-arm statute of the forum state, in this instance, New York." See Bensusan Restaurant Corp. v. King, 126

F.3d 25, 27 (2d Cir. 1997) (citation omitted). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." <u>Id.</u> In the present case, Plaintiff contends that jurisdiction over Defendants is proper pursuant to New York's long-arm statute, which provides as follows:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; . . . .

N.Y. C.P.L.R. § 302(a).[6] As the New York Court of Appeals has explained, Section 302(a)(1) is a "'single act'" statute pursuant to which "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted." <u>Kreutter v. McFadden Oil Corp.</u>, 71 N.Y.2d 460, 467 (1988) (citations omitted).

In determining whether the defendant "transacts business" in New York as contemplated by Section 302(a)(1), the court may consider a variety of factors, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

<u>Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted). "Although all are relevant, no one factor is dispositive. Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances." <u>Id.</u> (citation omitted).

### b.   *Defendants' contacts with New York*

Before addressing the parties' arguments, the Court will identify all of Defendants' contacts with New York that could support the Court's exercise of personal jurisdiction over them in that state.

---

[6] In this case, Defendants correctly point out, and Plaintiff does not dispute, that there is no *general* jurisdiction over Defendants under N.Y. C.P.L.R. § 301, because it is clear that Defendants are not conducting "continuous and systematic" business in New York to warrant a finding of their "presence" in New York. See <u>McGowan v. Smith</u>, 52 N.Y.2d 268, 272-73 (1981).

First, Plaintiff's Complaint alleges that starting in late 1999 and continuing well into 2000, Defendants Sandrew and Yapp began seeking and accepting legal services from Plaintiff in relation to breach of fiduciary duty claims brought against certain board members of [the AFT]." (Compl. ¶¶ 11-15.) Defendants do not dispute this, except for the starting date.[7] (See Sandrew Decl. ¶ 8 (Dec. 5, 2008); Yapp Decl. ¶ 9 (Dec. 4, 2008).) Although there is no mention as to where these discussions occurred or where these services were provided, it is clear that Defendants were aware that Gurvey was licensed to practice law in both California and New York, and that she performed at least a portion of her legal work for them from her New York office. (See Sandrew Decl. ¶ 20 (Dec. 5, 2008); Sandrew Decl. ¶ 6 (Sept. 15, 2009); Yapp Decl. ¶ 7 (Sept. 14, 2009).) Moreover, Plaintiff's first cause of action "arises out" of and relates to the provision of these services. (See Compl. ¶¶ 35-36.)

Second, Plaintiff's Complaint alleges that Defendants enlisted her help in establishing the LLC in early 2001. (See Compl. ¶ 16.) According to her, she continued to provide services to the LLC through October 2002. (See id. ¶ 29.) Defendants admit to seeking and receiving Plaintiff's services, with regard to the LLC's business, through June 2002. (See, e.g., Martin Decl. ¶ 14 (Sept. 14, 2009); Sandrew Decl. ¶¶ 8, 11 (Sept. 15, 2009); Yapp Decl. ¶¶ 8, 12, 14 (Sept. 14, 2009).) Once again, Defendants knew that these services were performed in New York by an attorney licensed in New York.[8] Plaintiff's second and third causes of action "arise out" of and relate to the provision of these services. (See Compl. ¶¶ 37-40.)

Third, Plaintiff alleges that Defendants have failed to perform as provided by the implied "contract" between them. The "contract" envisioned legal services provided by Plaintiff in New York for a period of two years. (See Compl. ¶ 21.) Although Defendants dispute the existence of any implied or oral "contract," they acknowledge that Plaintiff provided services for them during this time and that they were aware that those services were provided from Plaintiff's New York office. (See, e.g., Martin Decl. ¶ 14 (Sept. 14, 2009); Sandrew Decl. ¶¶ 10, 11 (Sept. 15, 2009); Yapp Decl. ¶¶ 12,

[7] According to Defendants, contact with Gurvey in regards to the AFT matters occurred in "approximately 2000." (See Sandrew Decl. ¶ 8 (Dec. 5, 2008); Yapp Decl. ¶ 9 (Dec. 4, 2008).)

[8] The Court is not persuaded by Defendants' attempts to prove their lack of knowledge and/or ambivalence as to where Plaintiff performed her legal services for them. At the end of the day, Defendants knew they were employing a New York attorney to perform these services in New York.

14 (Sept. 14, 2009).) Notably, Defendants acknowledge that Plaintiff's services "were performed, billed and paid" through the New York law firm that employed her at that time. (Sandrew Decl. ¶ 11 (Sept. 15, 2009).) Plaintiff's fourth, fifth, sixth, and seventh causes of action "arise out" of and relate to the services provided pursuant to this alleged "contract." (See Compl. ¶¶ 41-63.)

Additionally, it appears individual Defendants have visited New York with regard to the services provided by Plaintiff at least once. For example, together with her Response in Opposition to Defendants' motion to dismiss, Plaintiff submitted copies of several emails indicating that, in July 2001, individual Defendants had scheduled meetings in New York to meet with a number of prospective clients.[9] (See Squittieri Decl., Exs. 3, 4 (Aug. 10, 2009).) According to those emails, the meetings were to take place on July 10-12, 2001, and Plaintiff was the contact person for at least one of them. (See id.)

> c.      *Analysis*

Based on the foregoing contacts, the Court finds that at least Defendants Legend, Sandrew, and Yapp ("Amenable Defendants") were subject to personal jurisdiction under the New York's long-arm statute. As an initial matter, "New York courts are divided over the question of whether the retainer of an attorney in New York by an out of state party is a transaction of business within the state so that jurisdiction can be exercised over the non-resident." Reiner v. Durand, 602 F. Supp. 849, 852 (citing cases on both sides and concluding that the issue had to be decided under the fairness standard of International Shoe Co. v. State of Washington Office of Empl. Comp. & Placement, 326 U.S. 310, 317 (1945)). Nevertheless, according to the most recent decision of the New York Court of Appeals on this issue, "[i]t is well settled that 'one need not be physically present [in New York] to be subject to the jurisdiction of [New York] courts under CPLR 302.'" Fischbarg v. Doucet, 9 N.Y.3d 375, 382 (2007) (citation omitted). Rather, "even when physical presence is lacking, jurisdiction may still be

---

[9] The Court rejects Defendants' argument that the Court cannot consider these emails because they have not been properly authenticated. (See Def. Reply in Support of MTD at 3 (Aug. 14, 2009); Objections to Evidence in Pl. Opp. to Def. MTD at 1-2 (Aug. 4, 2009).) When determining whether the plaintiff alleged sufficient *prima facie* evidence of personal jurisdiction over the defendants, a court may consider supporting materials (in addition to any affidavits) submitted by the parties. See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted). "The purpose of the court's examination of these extrinsic materials is to determine whether there is any factual support for the plaintiff's prima facie case of jurisdiction." Laborers Local 17 Health & Ben. Fund v. Phillip Morris, 26 F. Supp. 2d 593, 604 (S.D. N.Y. 1998) (citation omitted).

1    proper if the defendant 'on his or her own initiative . . . projects himself or herself into [New York]

2    to engage in a 'sustained and substantial transaction of business.'" Id. (concluding that the defendants,

3    who resided in California, were subject to personal jurisdiction in New York as a result of their

4    "purposeful attempt to establish an attorney-client relationship [in New York] and their direct

5    participation in that relationship via calls, faxes and emails that they projected into [New York] over

6    many months"). Although the plaintiff may not rely upon "his or her own New York contacts" on

7    behalf of the defendant to establish long-arm jurisdiction, she may properly rely on defendant's

8    "*independent* activities" within the state to invoke long-arm jurisdiction. Id. (citations omitted).

9        In the present case, the Court concludes both that Amenable Defendants' contacts with New

10   York were "purposeful" and that there is a "substantial relationship" between them and the Plaintiff's

11   claims. See Kreutter, 71 N.Y.2d at 467 (citations omitted). Specifically, Amenable Defendants

12   engaged the services of a New York attorney, who was licensed in New York, and who they knew

13   would perform the majority of her services for them in New York. Even though the *subject matter* of

14   these services might have not focused solely on New York law, the above-mentioned contacts are

15   sufficient to fall within the purview of N.Y. C.P.L.R. § 302(a). Just like in Fischbarg, Amenable

16   Defendants in this case are residents of California and claim that they have never set foot in New

17   York. See Fischbarg, 9 N.Y.3d at 377, 381-82. However, also just like in Fischbarg, Amenable

18   Defendants sought out Plaintiff's services[10] and directed telephone conversations and emails to New

19   York throughout their attorney-client relationship.[11] See id. at 378, 382-83. Accordingly, because

20   Amenable Defendants availed themselves of the benefits of the New York attorney-client law when

21   they had Plaintiff perform legal services for them in New York, and because they could have

22   reasonably expected to defend a suit arising out of that relationship in New York, the Court finds that

23

24        [10] Defendants contend that, contrary to Plaintiff's allegations, she was the one who initiated
     the relationship between them. (See, e.g., Def. Supp. Mem. in Support of MTD at 6.) However, at a
25   motion to dismiss stage, the Court must accept the plaintiff's factual allegations as true, unless they
     are merely conclusory. See Iqbal, 129 S.Ct. at 1950; al-Kidd, 580 F.3d at 956 (citation omitted). In
26   the present case, there is sufficient basis to believe that Plaintiff's allegations that Defendants initiated
     the relationship are more than "conclusory." (See, e.g., Compl. ¶¶ 11, 15, 16.)

27

28        [11] Notably, Defendants appear to concede that communications with Plaintiff in New York
     occurred "periodically." (See Def. Supp. Mem. in Support of MTD at 5 n.3 (stating that Defendants
     "communicated with Gurvey periodically, but certainly not frequently")).)

1  they were subject to personal jurisdiction in New York. See id. at 384-85.

2      Defendants' attempt to distinguish this case from Fischbarg is not persuasive. It is true that in

3  Fischbarg, unlike in this case, defendants solicited plaintiff's services *in New York* and the

4  communications in that case were more frequent than what is alleged in this case. See id. 378, 380-81.

5  However, these factors were not dispositive of whether personal jurisdiction could properly be

6  asserted over the defendants in Fischbarg. Rather, according to the New York Court of Appeals, it is

7  "impossible to precisely fix those acts that constitute a transaction of business," and therefore the final

8  analysis should be guided by examining "the *quality* of the defendants' New York contacts." Id. at 380

9  (citations omitted) (emphasis added). Thus, the ultimate decision is based on the "totality of

10 circumstances," for which the "traditional factors" set forth in Agency Rent A Car can act as the

11 "guideposts." See Sills v. Ronald Reagan Presidential Foundation, Inc., No. 09 Civ. 1188 (GEL), 2009

12 WL 1490852, at *6 & n.4 (S.D. N.Y. May 27, 2009). In the present case, these factors point in favor

13 of finding personal jurisdiction because, accepting Plaintiff's allegations as true, it appears that: (1)

14 Amenable Defendants entered into an attorney-client relationship with a New York attorney, (2) they

15 have visited New York at least once in connection with that relationship, and (3) Amenable

16 Defendants paid Plaintiff through her New York firm.[12] See Agency Rent A Car, 98 F.3d at 29.

17      Accordingly, Amenable Defendants were subject to personal jurisdiction under N.Y. C.P.L.R.

18 § 302(a).

19              2.      *Due Process requirements*

20      The exercise of personal jurisdiction in this case accords with the requirement of due process.

21 "'So long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with

22 it, and should reasonably expect to defend its actions there, due process is not offended if that party

23 is subjected to jurisdiction even if not "present" in that State.'" Fischbarg, 9 N.Y.3d at 384-85

24 (quoting Kreutter, 71 N.Y.2d at 466). In the present case, just like in Fischbarg, Amenable Defendants

25

26      [12] Notably, this case does not involve "limited contacts" that the New York Court of Appeals
        concluded do not support the exercise of personal jurisdiction by themselves: (1) "'merely telephoning
27      a single order' to New York requesting shipment of goods to another state," (2) "the transitory
        presence of a corporate official [in New York]," and (3) "communications and shipments sent [to New
28      York] by an out-of-state doctor serving as a 'consultant' to plaintiff's New York physician." See
        Fischbarg, 9 N.Y.3d at 380 (internal citations omitted).

"purposefully availed themselves of New York's legal services market by establishing a continuing attorney-client relationship" with Plaintiff. See id. at 385. Amenable Defendants' contacts in New York were also "sufficient," consisting of: (1) solicitation of Plaintiff's services with the knowledge that those services will be performed in New York, (2) paying for those services in New York, and (3) periodic communications with Plaintiff in New York over the phone and email.

Given these facts, Amenable Defendants "should have reasonably expected to defend against a suit based on their relationship with plaintiff in New York." See id. (citing Reiner, 41 N.Y.2d at 653 (New York contacts that "contemplated and resulted in a continuing relationship . . . certainly are of the nature and quality to be deemed sufficient to render (defendants) liable to suit [there]")).

### *3.*   *Personal jurisdiction over the individual Defendants*

The Court next addresses whether the contacts by individual Defendants on behalf of Legend can be imputed to them. Although the above analysis focused mostly on the contacts that Legend had with New York, it is similarly applicable to the individual Amenable Defendants. New York has expressly rejected the "fiduciary shield doctrine," applicable in some States, which provides that "an individual should not be subject to jurisdiction if his dealings in the forum State were solely in a corporate capacity." See Kreutter, 71 N.Y.2d at 467. Rather, long-arm jurisdiction over individual defendants is proper if the plaintiff establishes either (1) that individual defendants' own contacts with New York satisfy the statute's requirements, or (2) that the Court's jurisdiction over the corporation should be imputed to the officers under an agency theory. See Hypoxico, Inc. v. Colorado Altitude Training LLC, No. 02 Civ. 6191 (JGK), 2003 WL 21649437, at *3 (S.D. N.Y. July 14, 2003).

In order for the corporation's actions to be imputed to individual defendants, the plaintiff must "'convince the court that the corporation engaged in purposeful activities in [New York] in relation to Plaintiff's transaction for the benefit of and with the knowledge and consent of the individual defendants and that the individual defendants exercised some control over the corporation in the matter.'" See Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 647 (S.D. N.Y. 2008) (quoting Kreutter, 71 N.Y.2d 460). Thus, the plaintiff "must demonstrate that 'the out-of-state corporate officers were "primary actors in the transaction in New York" that gave rise to the litigation, and not merely "some corporate employees . . . who played no part in" it.'" Id. (citation omitted).

*a.     Defendants Sandrew and Yapp*

In the present case, the New York court had personal jurisdiction over Defendants Sandrew and Yapp because they were the "primary actors" in the transaction that gave rise to this litigation, and therefore their actions on behalf of the LLC can be imputed to them. See id. Moreover, with regard to Defendants Sandrew and Yapp, personal jurisdiction was proper  because of their personal contacts with Plaintiff before the formation of the LLC, and their subsequent communications with her on behalf of the LLC. Specifically, taking Plaintiff's allegations as true, Defendants Yapp and Sandrew solicited her services in 2000 with regard to their positions with the AFT, knowing that she was an attorney licensed in New York and working in New York. (See Compl. ¶¶ 11-15.) Both of these Defendants then enlisted Plaintiff's help in establishing the LLC. (See id. ¶ 16.) Over the course of the next two years, both Defendants Yapp and Sandrew appear to have communicated with Plaintiff over the phone and email, on behalf of the LLC, regarding her legal services for the LLC. (See Sandrew Decl., ¶¶ 10, 11 (Sept. 15, 2009); Yapp Decl., ¶¶ 8, 9, 12, 14 (Sept. 14, 2009).) These contacts in their individual capacities and on behalf of the LLC are sufficient to subject them to personal jurisdiction in New York. See, e.g., Kreutter, 71 N.Y.2d at 470-71 (noting that the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), held that it was "constitutionally permissible to subject an individual participating in a transaction in a foreign State to long-arm jurisdiction even though his contacts with the forum were made in a corporate capacity").

*b.     Defendant Martin*

On the other hand, the New York court did not have personal jurisdiction over Defendant Martin. Notably, when compared with the other two individual Defendants, Martin's contacts with New York, and specifically Plaintiff in New York, are significantly less. Defendant Martin became affiliated with the LLC only in April 2002, and replaced Defendant Yapp as the CEO of the LLC in September 2002. (Decl. Martin, ¶ 2 (Dec. 3, 2008).) Accordingly, Defendant Martin could not have been a "primary actor[]"for most of the transactions that gave rise to this litigation, and therefore the personal jurisdiction over the LLC cannot be imputed to him. See Arma, 591 F. Supp. 2d at 647. Any other contact that Defendant Martin might have had with Plaintiff in New York falls substantially

1   short of the standard contemplated by the New York Court of Appeals in <u>Fischbarg</u>, 9 N.Y.3d 375.[13]

2   Based on the foregoing, personal jurisdiction over the LLC cannot be imputed to Defendant Martin,

3   and therefore the New York court did not have personal jurisdiction over him.

4                    *iv.*    *Conclusion*

5          For the foregoing reasons, the Court finds that a New York court faced with these issues would

6   have concluded that it could properly exercise personal jurisdiction over Defendants Legend,

7   Sandrew, and Yapp ("Amenable Defendants"). Therefore, with respect to those Defendants, this Court

8   must apply the applicable law, including the choice-of-law rules, of New York. <u>See</u> <u>Van Dusen</u>, 376

9   U.S. at 637-39; <u>Muldoon</u>, 1 F.3d at 965-66. On the other hand, the Court also finds that a New York

10  court would have concluded that it could not properly exercise personal jurisdiction over Defendant

11  Martin. Accordingly, as to that Defendant, this Court must apply the applicable law, including the

12  choice-of-law rules, of California. <u>See</u> <u>Muldoon</u>, 1 F.3d at 967 (citations omitted).

13  **III.    Statute of limitations**

14       A.    Claims against Amenable Defendants

15            *1.    Choosing the applicable statute of limitations*

16          Having determined that this Court should apply the New York choice-of-law rules as to the

17  claims against the Amenable Defendants, the Court must next determine which statute of limitations

18  is applicable. <u>See</u> <u>Huynh</u>, 465 F.3d at 997 (citation omitted). Choice-of-law issues involving

19  contractual disputes are resolved in New York by a "center of gravity" or "grouping of contacts"

20  approach. <u>Brink's Ltd. v. South African Airways</u>, 93 F.3d 1022, 1030 (2d Cir. 1996) (citation

21  omitted). "Under this approach, courts may consider a spectrum of significant contacts, including the

22  place of contracting, the places of negotiation and performance, the location of the subject matter, and

23  the domicile or place of business of the contracting parties." <u>Id.</u> at 1030-31 (citing <u>In re Allstate Ins.</u>

24  <u>Co. & Stolarz</u>, 81 N.Y.2d 219, 227 (1993)). Out of these, the place of contracting and the place of

25  _____

26        [13] For example, Plaintiff alleges that one of her jobs for the LLC was drafting the employment
    contract eventually signed by Defendant Martin and the LLC. (<u>See</u> Compl. ¶ 28.) Moreover, Plaintiff
27  alleges that Defendant Martin was one of the individuals who gave her reassurances that she will be
    paid and who allegedly offered her 40,000 shares of stock as late as April 22, 2003. (<u>See</u> Squitieri
28  Decl., Ex. 13.) However, even if true, these actions are insufficient to establish that Defendant Martin
    projected himself into New York "to engage in a 'sustained and substantial transaction of business.'"
    <u>See</u> <u>Fischbarg</u>, 9 N.Y.3d at 382 (citation omitted).

1 | performance are given the greatest weight. Id. at 1031.

2 |     In the present case, however, it does not matter how the "center of gravity" approach plays out.

3 | As the Supreme Court has concluded, a State may choose to apply its own statute of limitations to

4 | claims governed by the substantive laws of another State without violating either the Full Faith and

5 | Credit Clause or the Due Process Clause. Sun Oil Co. v. Wortman, 486 U.S. 717, 722 (1988). Thus,

6 | regardless of whether the New York court would have applied New York or California *substantive*

7 | law, it is well-established that "New York courts generally apply New York's statutes of limitations,

8 | even when the injury giving rise to the action occurred outside New York." See Stuart v. American

9 | Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998) (citation omitted). This is so because, in New York,

10 | statutes of limitations "are generally considered procedural" due to the fact that they are "'viewed as

11 | pertaining to the remedy rather than the right.'" Tanges v. Heidelberg North America, Inc., 93 N.Y.2d

12 | 48, 54-55 (1999) (citation omitted).

13 |     This general rule, however, is subject to two exceptions. First, it does not apply where "the

14 | right sued upon was *created* by a foreign statute under which the commencement of an action within

15 | a specified period is a condition precedent to securing relief." Whisenhunt v. Sylvania Corp., 671 F.

16 | Supp. 214, 216 (W.D. N.Y. 1987). This is not the case here. Second, the rule is subject to the

17 | "traditional statutory exception" in the form of New York's "borrowing" statute. See Stuart, 158 F.3d

18 | at 627; see also Hughes Elec. Corp. v. Citibank, 120 Cal. App. 4th 251, 259 (2004). The applicability

19 | of the "borrowing" statute in this case is discussed next.

20 | ### 2. *New York's "borrowing statute"*

21 |     Under New York's "borrowing statute,"[14] a case filed by a non-resident plaintiff requires

22 | application of the shorter statute of limitations period provided either by New York or the state where

23 | the cause of action accrued. Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002). The

24 | primary purpose of the statute is to prevent forum-shopping by a non-resident plaintiff "seeking to

---

[14] New York's "borrowing statute," N.Y. C.P.L.R. § 202, reads as follows:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

take advantage of a more favorable Statute of Limitations in New York." Antone v. General Motors Corp., 64 N.Y.2d 20, 27-28 (1984) (citation omitted). Moreover, the statute advances the "equally important purpose" of adding clarity to the law and ensuring its uniform application to litigants. Ins. Co. of North America v. ABB Power Gen., Inc., 91 N.Y.2d 180, 187 (1997). On the other hand, where the cause of action accrued "in favor of a resident of [New York]," then "the time limited by the laws of [New York] shall apply." N.Y. C.P.L.R. § 202.

In the present case, Plaintiff was not a resident of New York, within the meaning of N.Y. C.P.L.R. § 202, when her causes of action accrued. "New York has long recognized that 'residence' and 'domicile' are not interchangeable. Antone, 64 N.Y.2d at 28. "[W]hile a person can have but one domicile[,] he can have more than one residence." Id. This understanding was well established in 1962 when the C.P.L.R. was enacted, and nothing in the legislative history of C.P.L.R. § 202 indicates otherwise. Id. at 29. Nevertheless, "the determination of whether a plaintiff is a New York resident, for purpose of CPLR 202, turns on whether he has a significant connection with some locality in the State as the result of living there for some length of time during the course of the year." Id. at 30 (citations omitted).

Here, Plaintiff concedes that by the time Defendants allegedly breached the contract, she had already changed her "residence" from New York to New Jersey. (See Pl. Supp. Mem. in Opp. to Def. MTD at 4 n.1.) That move occurred in April 2002, and Defendants allegedly breached the contract in November 2002. While the precise language used by Plaintiff ("residence" vs. "domicile") is not controlling, New York cases establish that to be considered a New York resident a person "must stay there for some time and have a bona fide intent to *retain the place as a residence* for some length of time and with some degree of permanency." Allen v. Handzer, 148 Misc. 2d 334, 341 (N.Y. Sup. Ct. 1990) (citing cases) (emphasis added). Although Plaintiff alleges that she continued to perform work for Defendants out of her New York office, it is clear that she was no longer living in New York as well as that there was no intent to retain New York as a place of residence. Accordingly, she cannot be considered a "resident" of New York for purposes of N.Y. C.P.L.R. § 202. See Allen, 148 Misc. 2d at 341 (finding that plaintiff was not a New York "resident" despite spending "virtually all her time in New York, where she worked when she could get work as an actress, shopped, ate and slept '60 to

1   70' percent of the time at the apartment of her boyfriend").

2       Accordingly, because Plaintiff was not a New York resident when her causes of action

3   accrued, the borrowing statute requires that the Court next determine *where* those causes of action

4   accrued. New York follows "the traditional definition of accrual–a cause of action accrues at the time

5   and in the place of the injury." Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (1999). Where,

6   as here, the "injury is purely economic, the place of injury usually is where the plaintiff resides and

7   sustains the economic impact of the loss." Id. (citations omitted); see also Hughes Elec. Corp., 120

8   Cal. App. 4th at 259 n.5. In the present case, that would mean the cause of actions accrued in New

9   Jersey, seeing as Plaintiff was a New Jersey "resident" in October 2002.[15]

10      The statute of limitations in New Jersey for recovery upon "a contractual claim or liability,

11  express or implied" is six years.[16] N.J. Stat. Ann. § 2A:14-1; see also Iwanowa v. Ford Motor Co., 67

12  F. Supp. 2d 424, 473 (D. N.J. 1999) (citing Miller v. Bd. of Chosen Freeholders of Hudson County,

13  10 N.J. 398, 409 (1952)) (applying the six-year statute of limitations to "claims sounding in

14  restitution/unjust enrichment or quantum meruit").[17]

15      B.   Claims against Defendant Martin

16      As noted earlier, because the New York court did not have personal jurisdiction over

17  Defendant Martin, this Court must apply California choice-of-law rules to the claims against him. In

18

19      [15] Even if Plaintiff's first two causes of action for quantum meruit accrued in New York, the analysis in Part IV of this Order still applies. As is explained below, the New York and New Jersey applicable law on this issue is almost identical. (See infra n.17; Part IV.A.)

20

21      [16] The applicable statute of limitations, as a whole, provides:

22      Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

23

24

25

26      [17] As a side note, even if the pro-resident section of the New York's "borrowing statute" applies, the result would be the same. Similar to New Jersey, New York would apply a six-year statute of limitations to all of Plaintiff's claims. See N.Y. C.P.L.R. § 213.2 (applying a six-year statute of limitations to all actions "upon a contractual obligation or liability, express or implied," except for several exceptions not applicable here); see also Cohen v. City Co. of New York, 283 N.Y. 112 (1940) (applying the six-year statute of limitations to a quantum meruit claim).

27

28

1   1967, the California Supreme Court adopted the "governmental interest" approach for choice-of-law

2   issues. See Reich v. Purcell, 67 Cal. 2d 551 (1967); Hurtado v. Super. Ct., 11 Cal. 3d 574, 579-80

3   (1974). This approach requires "analysis of the respective interests of the states involved." Hurtado,

4   11 Cal. 3d at 579. In applying the "governmental interest" approach, the court must follow a three-step

5   analysis:

6   First, the court determines whether the relevant law of each of the potentially affected
    jurisdictions with regard to the particular issue in question is the same or different.

7   Second, if there is a difference, the court examines each jurisdiction's interest in the
    application of its own law under the circumstances of the particular case to determine

8   whether a true conflict exists. Third, if the court finds that there is a true conflict, it
    carefully evaluates and compares the nature and strength of the interest of each

9   jurisdiction in the application of its own law "to determine which state's interest would
    be more impaired if its policy were subordinated to the policy of the other state," and

10  then ultimately applies "the law of the state whose interest would be the more impaired
    if its law were not applied."

11

12  Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107-08 (2006) (internal citations omitted);

    see also Paulsen v. CNF Inc., 559 F.3d 1061, 1080 (9th Cir. 2009) (citation omitted).

13

14      In the present case, there is no dispute that the applicable statutes of limitation are different

15  under California and New York laws. Accordingly, the Court must examine each jurisdiction's interest

16  in having its law applied in this case, and must ultimately apply "'the law of the state whose interest

17  would be the more impaired if its law were not applied.'" Kearney, 39 Cal. at 107-08 (citation

18  omitted). As the Ninth Circuit has indicated, "[w]here the conflict concerns a statute of limitations,

19  the governmental interest approach generally leads California courts to apply California law." Deutsch

20  v. Turner Corp., 324 F.3d 692, 716-17 (9th Cir. 2003) (citations omitted). This is especially true where

21  California's statute would bar a claim. Id. at 718. Thus, "'subject to rare exceptions, the forum will

22  dismiss a claim that is barred by its statute of limitations.'" Id. (quoting RESTATEMENT (SECOND) OF

    CONFLICT OF LAW § 142, cmt. f (1988)).

23

24      California law should apply in this case. In determining which state has the stronger interest

25  in having its law applied, the court gives considerable weight to the following two factors: (1) the

26  residence of the defendants and (2) the forum. See Ledesma v. Jack Stewart Produce, Inc., 816 F.2d

27  482, 485 (9th Cir. 1987); Nogart v. Upjohn Corp., 21 Cal. 4th 383, 395 (1999); Ashland Chem. Co.

    v. Provence, 129 Cal. App. 3d 790, 794 (1982). Thus, in the present case, the fact that all of

28  Defendants are California residents and California is the forum weighs strongly in favor of applying

California law. <u>See</u> <u>Ashland</u>, 129 Cal. App. 3d at 794 (concluding that California was the only

interested state where California was the forum and the only defendant was a California resident).

Plaintiff, however, relies on <u>Aalmuhammed v. Lee</u>, 202 F.3d 1227 (9th Cir. 2000), in arguing

that the Court can apply New York law to an action brought by a New York plaintiff in California

against California defendants. In <u>Aalmuhammed</u>, a Florida plaintiff sued California defendants in

California under quantum meruit for services allegedly performed in New York and Egypt. 202 F.3d

at 1237. In applying the New York statute of limitations, the Ninth Circuit remarked that "'the

residence of the parties is not the determining factor in a choice of law analysis.'" <u>Id.</u> (quoting

<u>Waggoner v. Snow, Becker, Kroll, Klaris & Krauss</u>, 991 F.2d 1501, 1507 (9th Cir. 1993)). Rather,

according to the court, New York law should apply because "New York's connection with

Aalmuhammed's claim is considerably more substantial, immediate and concrete." <u>Id.</u>

In the present case, however, California's connection with Gurvey's claims is more substantial

than in <u>Aalmuhammed</u> because Gurvey's work concerned both California and New York, whereas in

<u>Aalmuhammed</u> there was no work at all performed in California. Specifically, Gurvey is an attorney

licensed to practice in California, she has first met with Defendants in California, and a lot of her

work–although performed in New York–concerned the application of California law. (<u>See, e.g.</u>,

Martin Decl. ¶ 14 (Sept. 14, 2009); Sandrew Decl. ¶¶ 6-8, 10-11 (Sept. 15, 2009); Yapp Decl. ¶¶ 7,

9, 14 (Sept. 14, 2009).) Accordingly, unlike in <u>Aalmuhammed</u>, California has a more "substantial,

immediate and concrete" connection to Plaintiff's claims than does New York to have its law applied.

<u>See</u> <u>High Country Linens, Inc. v. Block</u>, No. C 01-02180 CRB, 2002 WL 1998272, at *3 (N.D. Cal.

Aug. 20, 2002) (applying California law, instead of New York law, where plaintiff was registered to

do business in California and had a 35,000 square foot distribution facility in California).

Accordingly, the Court will apply California law to Plaintiff's claims against Defendant

Martin. In California, an action upon a contract or obligation "not founded upon an instrument in

writing," which encompasses both breach of implied contract and recovery based on quantum meruit,

is governed by a two-year statute of limitations. CAL. CODE CIV. PROC. § 339(1); <u>see also</u> <u>Iverson,</u>

<u>Yoakum, Papiano & Hatch v. Berwald</u>, 76 Cal. App. 4rg 990, 996 (1999) (citation omitted) (an

attorney's action against a client for recovery of unpaid legal fees is a quasi-contract action governed

1   by a two-year statute of limitations); <u>Roots Ready Made Garments v. Gap Inc.</u>, No. C 07-03363 CRB,

2   2007 WL 3045999, at *5 (N.D. Cal. 2007) ("[C]laims for promissory estoppel, quantum meruit and

3   unjust enrichment are subject to a two-year statute of limitations." (citations omitted)).

4   **IV.     Timeliness of Plaintiff's claims**

5           A.      <u>Plaintiff's quantum meruit claims</u>

6           Plaintiff's first, second, and third causes of action assert claims of quantum meruit for her

7   services for individual Defendants prior to formation of the LLC as well as for her services during the

8   formation. (<u>See</u> Compl. ¶¶ 35-40.) However, under both New York and New Jersey laws, the statute

9   of limitations begins to run on a claim for quantum meruit when the final services have been

10  performed. <u>See</u> <u>Baer v. Chase</u>, 392 F.3d 609, 622-23 (3d Cir. 2004) (applying New Jersey law);

11  <u>Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff</u>, 638 F. Supp. 714, 722 (S.D. N.Y. 1986)

12  (citation omitted). The same is true for California. <u>See, e.g.</u>, <u>E.O.C. Ord, Inc. v. Kovakovich</u>, 200 Cal.

13  App. 3d 1194, 1203 (1988) (citations omitted); <u>Johnstone v. E & J Mfg. Co.</u>, 45 Cal. App. 2d 586,

14  587-88 (1941) (citations omitted).

15              i.      *First cause of action against Sandrew and Yapp (quantum meruit)*

16          In the present case, the Complaint alleges that Plaintiff performed services for individual

17  Defendants in their capacity as directors of AFT "well into 2001." (Compl. ¶ 15.) As Defendants point

18  out, even if the Court generously assumes that the last day for the provision of those services was

19  December 31, 2001, Plaintiff's claim is barred by the six-year statute of limitations. Realizing this,

20  Plaintiff argues that the statute of limitations should be tolled because of the alleged reassurances by

21  Defendants that she will be payed. (Pl. Mem. in Opp. of Def. MTD at 14-15.) However, this exact

22  argument was rejected by the Third Circuit in <u>Baer</u>, where the court stated that "[t]he essence of a

23  quasi-contract claim is not the expectancy of the parties, but rather the unjust enrichment of one of

24  them." 392 F.3d at 622. As a result, it would be "inappropriate" to look at Plaintiff's expectations of

25  payment, rather than the services she provided to Defendants. <u>See id.</u> (noting that the plaintiff's belief

26  "that he was going to get paid if and when the show was a success" was irrelevant).

27          For the foregoing reasons, because the last services with respect to the first cause of action

28  were provided in 2001, and Plaintiff did not file her Complaint until October of 2008, the recovery

on that cause of action is barred by the applicable six-year statute of limitations. Accordingly, the Court **DISMISSES WITHOUT LEAVE TO AMEND** the first cause of action against Defendants Sandrew and Yapp.

       ii.  *Second cause of action against Sandrew and Yapp (quantum meruit)*

   The same result befalls Plaintiff's second cause of action, which deals with provision of services in connection with the formation of the LCC.[18] Seeing as the LLC was formed in 2001, the last possible date for provision of those services could be no later than December 31, 2001. Thus, for the reasons discussed above, any recovery on Plaintiff's second cause of action is similarly barred by the applicable six-year statute of limitations. Accordingly, the Court also **DISMISSES WITHOUT LEAVE TO AMEND** the second cause of action against Defendants Sandrew and Yapp.

      iii.  *Third cause of action against Legend Films (quantum meruit)*

   Finally, Plaintiff's third cause of action does not appear to be barred by the six-year statute of limitations. As initial matter, though, the focus of this cause of action is unclear. It merely seeks recovery "for services rendered to Legend Films," but does not state for which period the recovery is sought. (See Compl. ¶¶ 39-40.) However, resolving any ambiguity in Plaintiff's favor, it appears that it seeks recovery for the services rendered in 2001 and 2002. Because Plaintiff alleges that Defendants breached the contract in November 2002, and she filed the Complaint on October 28, 2008, it appears this cause of action is timely. Accordingly, because the running of the statute of limitations with regard to Plaintiff's third cause of action is not "'apparent on the face of the complaint,'" see Huynh, 465 F.3d at 997 (citations omitted), the Court **DENIES** Defendants' motion to dismiss.

   B.  Breach of contract claims

   Plaintiff's fourth and fifth causes of action allege breach of contract against Legend and against the individual Defendants. "The cause of action for breach of contract accrues, and the statute of

---

   [18] Although Plaintiff's second cause of action seeks recovery "for services rendered in connection with *Legend Films* prior to the formation of *Legend Films*," (Compl. ¶¶ 37-38 (emphases added)), it appears that Plaintiff in this cause of action seeks recovery for services rendered in connection with the formation of the *Legend Films, LLC*, rather than Legend Films, Inc. This is so because Legend Films, Inc. was not incorporated until 2003, which was after any services that Plaintiff rendered to Defendants.

1    limitations begins to run, at the time of the breach." <u>Franconia Associates v. United States</u>, 536 U.S.

2    129, 142 (2002) (citing 1 C. Corman, Limitations of Actions § 7.2.1, p. 482 (1991)). In the present

3    case, accepting Plaintiff's factual allegations as true, the contract was breached in November 2002,

4    while Plaintiff filed her Complaint in October 2008. Accordingly, because the running of the statute

5    of limitations with regard to these causes of action against the Amenable Defendants is not "'apparent

6    on the face of the complaint,'" <u>see</u> <u>Huynh</u>, 465 F.3d at 997 (citations omitted), the Court **DENIES**

7    Defendants' motion to dismiss with respect to Defendants Legend, Sandrew, and Yapp.

8         On the other hand, Plaintiff's recovery against Defendant Martin is governed by California's

9    two-year statute of limitations. <u>See</u> CAL. CODE CIV. PROC. § 339(1). Accordingly, because any

10   recovery on this cause of action is barred by the two-year period, the Court **DISMISSES WITHOUT**

11   **LEAVE TO AMEND** the fifth cause of action against Defendant Martin.[19]

12        C.    <u>Remaining claims</u>

13        Plaintiff's sixth and seventh causes of action are grounded in promissory estoppel (against all

14   Defendants) and specific performance (against Defendant Legend). Because the essence of a claim

15   of promissory estoppel is "a claim of damages for breach of promise," courts apply the same statutes

16   of limitations as they would for breach of contract. <u>See</u> <u>Schmidt v. McKay</u>, 555 F.2d 30, 36 (2d Cir.

17   1977) (citations omitted); <u>see also</u> <u>Day v. Greene</u>, 59 Cal. 2d 404, 411 (1963) (citations omitted).

18   Likewise, the statute of limitations on a specific performance claim would be the same, seeing as the

19   specific performance is grounded in the underlying breach of contract. Thus, as discussed above, both

20   of these causes of actions would have accrued on the date of the alleged breach (November 2002).

21        Accordingly, because the running of the six-year statute of limitations with regard to these

22   causes of action against the Amenable Defendants is not "'apparent on the face of the complaint,'"

23   <u>see</u> <u>Huynh</u>, 465 F.3d at 997 (citations omitted), the Court **DENIES** Defendants' motion to dismiss

24   with respect to Defendants Legend, Sandrew, and Yapp. On the other hand, because it is clear that

25   Plaintiff's claim against Defendant Martin is barred by the two-year statute of limitations, the Court

26

27   _____

28        [19] The Court notes that Plaintiff's recovery against Defendant Martin on this cause of action
     would be barred even if the Court applied the four-year statute of limitations governing actions upon
     contracts or obligations "founded upon an instrument in writing." <u>See</u> CAL. CODE CIV. PROC. § 337(1).

1  **DISMISSES WITHOUT LEAVE TO AMEND** the sixth cause of action against Defendant Martin.[20]

2  **V.      Defendants' alternative claim for dismissal**

3          Alternatively, Defendants argue that the individual Defendants cannot be held liable for breach

4  of contract under a corporate contract. (<u>See</u> Def. Mem. in Support of Def. MTD at 16-17.) According

5  to Defendants, it is "'well established that corporate agents and employees acting for and on behalf

6  of a corporation cannot be held liable for inducing a breach of the corporation's contract.'" <u>Reynolds</u>

7  <u>v. Bement</u>, 36 Cal. 4th 1075, 1087 (2005) (citation omitted). That statement, however, applies only

8  where the agents or employees are being held liable "'merely by reason of their official position.'"

9  <u>Id.</u> Under New York law, individual defendants can be liable for a breach of corporate contract if they

10  have induced that breach, if they have acted outside the scope of their employment, or if they have

11  personally profited from their acts. <u>See</u> <u>Citicorp Retail Services v. Wellington Mercantile Services,</u>

12  <u>Inc.</u>, 90 N.Y.S.2d 98, 99 (N.Y. App. Div. 1982).

13          In the present case, Plaintiff alleges that her initial services were provided to the individual

14  Defendants and that the reassurances that she will be paid came from the individual Defendants. (<u>See,</u>

15  <u>e.g.</u>, Pl. Mem. in Opp. of Def. MTD at 16-17; Squitieri Decl., Exs. 10, 11, 12, 13.) Read liberally, the

16  Complaint does appear to allege that individual Defendants "induced" the breach of "contract" and

17  that they have "personally profited" from their acts. <u>See</u> <u>Citicorp Retail Services</u>, 90 N.Y.S.2d at 99.

18  Accordingly, the Court **DENIES** Defendants' alternative argument.

19                                      **CONCLUSION**

20          For the foregoing reasons, the Court orders as follows:

21          (1)     Defendants' Motion to Dismiss Plaintiff's first and second causes of action is

22  **GRANTED**. Accordingly, the Court **DISMISSES WITHOUT LEAVE TO AMEND** the first and

23  second causes of action in their entirety;

24          (2)     Defendants' Motion to Dismiss Plaintiff's third, fourth, fifth, sixth, and seventh causes

25  of action with respect to Defendants Legend, Sandrew, and Yapp is **DENIED**; and

26          (3)     Defendants' motion to dismiss Plaintiff's fifth and sixth causes of action with respect

27

28          [20] As noted above, Plaintiff's recovery against Defendant Martin on this cause of action would be barred even if the Court applied the four-year statute of limitations. <u>See</u> <u>id.</u>

to Defendant Martin is **GRANTED**, and the Court **DISMISSES WITHOUT LEAVE TO AMEND** the fifth and sixth causes of action as to Defendant Martin. Accordingly, because all of Plaintiff's causes of actions against Defendant Martin were dismissed, the Court **DISMISSES** Defendant Martin from this action.

      **IT IS SO ORDERED.**

DATED:  January 4, 2010

IRMA E. GONZALEZ, Chief Judge
United States District Court

09cv942-IEG (JMA)