UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY R. GURVEY, | Case No.: 3:09-cv-00942 AJB (BGS) |
| Plaintiff, | Order Denying Plaintiff's Ex Parte Applications, [Doc. Nos. 148 and 149], |
| v. | Granting Defendants' Motion for Summary Judgment, [Doc. No. 118], Denying |
| LEGEND FILMS, INC. *formerly known as* LEGEND FILMS, LLC, JEFFREY B. YAPP, BARRY B. SANDREW, LEGEND3D, INC., and LEGEND FILMS, LLC, | Plaintiff's Motion for Summary Judgment, [Doc. No. 132], Denying Plaintiff's Motion to Vacate, Transfer to SDNY for Trial, and for Extension of Time to File Pre-Trial Documents, [Doc. No. 157], Denying |
| Defendants. | Plaintiff's Motion to Stay Preliminary Pre-Trial Memo and Witness Lists, [Doc. No. 161]. |

The Defendants have filed a motion for summary judgment (Doc. No. 118) on all of the causes of action in Plaintiff's First Amended Complaint ("FAC"), (Doc. No. 78). The Plaintiff filed a cross motion for summary judgment, (Doc. No. 132), seeking a variety of sanctions and summary judgment on the issue of Plaintiff's 3% interest in Legend Films. The Plaintiff filed ex parte applications, (Doc. Nos. 148 and 149), on January 19, 2012 seeking: (1) an extension of time to obtain counsel to file her reply brief, and (2) leave to file an amended complaint. The Plaintiff also filed a motion to vacate a prior stipulation and transfer the case to SDNY for trial, and for an extension of time to file pre-trial documents, (Doc. No. 157). Plaintiff also filed a motion for a stay on the preliminary pre-trial memo and witness lists, (Doc. No. 161). For the reasons set forth below, the Plaintiff's ex parte applications,

(Doc. Nos. 148 and 149), are DENIED; Plaintiff's motion for transfer and for extension of time to file pre-trial documents, (Doc. No. 157), is DENIED; Plaintiff's motion to stay preliminary pre-trial memo and witness list (Doc. No. 161), is DENIED AS MOOT; Defendants' motion for summary judgment, (Doc. No. 118), is GRANTED; and Plaintiff's cross motion for summary judgment, (Doc. No. 132), is DENIED.

### *Background*

### *I.     The Parties*

Plaintiff, Amy Gurvey, is an attorney licensed to practice in the states of California and New York with experience and training in entertainment and intellectual property law.[1]  She was a resident of New York until 2002, at which time she moved her residence to New Jersey.  Ms. Gurvey contends that she performed legal services for Defendant Legend Films, Inc. as well as individual Defendants between 2000 and 2002.

Defendant Legend Films, Inc. ("Legend") is a San Diego-based company specializing in the restoration and colorization of old black-and-white films and television shows for DVD, HDTV, and theatrical release.  Legend Films, LLC ("LLC"), the predecessor to Legend, was formed in 2001 by Defendants Yapp and Sandrew, and was incorporated in Nevada.  In 2003, Legend was incorporated in California, and the LCC ceased to exist.

Defendant Barry Sandrew, Ph.D., is a California resident, and is currently serving as President and Chief Operating Officer of Legend.  Sandrew is the inventor of an all-digital process for colorizing black and white films.

Defendant Jeffrey Yapp is currently a California resident and serves as Chairman of Legend's Board of Directors.  In 2001, when the LLC was formed, Yapp was a resident of Oregon.  Subsequently, in 2001, Yapp began working for Cablevision Systems Corporation ("Cablevision") in New York.  In late 2002, Yapp moved from Oregon to New York, where he remained until early 2006.

Defendant David Martin, a California resident, is Legend's Chief Executive Officer and a member of the company's Board of Directors.

---

[1] The following facts here and in the "Background" section are taken from the FAC and the parties moving papers.

## II. Factual Background

In late 1999, Plaintiff began performing legal services for Defendants Sandrew and Yapp in connection with breach of fiduciary duty claims against certain board members of the American Film Technologies, Inc. ("AFT"). At that time, both Sandrew and Yapp were AFT board members.

Sandrew and Yapp resigned from AFT on November 7, 2000. At that time, Plaintiff was working on various projects for Sandrew, including review of patents, contracts, and employment agreements pertaining to Sandrew and potential outsourcing companies. Plaintiff continued providing legal services to Yapp and Sandrew, and allegedly at their request also began providing legal services to Legend. Plaintiff's "General Counsel" services included aid in: formation of the company, drafting and reviewing contracts, proposals to film studios, intellectual property issues, and capital-raising activities. The Plaintiff contends that at all relevant times, Legend allegedly held Plaintiff out to the public (e.g., in its prospectus, business plan, and executive summary) as its General Counsel and part of its management team.

On November 15, 2001, Plaintiff allegedly entered into an Employment Agreement (the "Agreement") with the LLC to serve as the company's General Counsel. The Agreement was for an initial term of two years commencing January 1, 2002, with an annual base salary of $125,000 plus other renumeration and benefits, including an ownership stake in Legend. The Agreement also contained a provision that Plaintiff could only be terminated upon ninety days prior written notice with a reasonable opportunity to cure any alleged failure to perform. Additionally, upon termination Plaintiff would be entitled to salary, accrued time off, earned bonuses, stock options, and deferred compensation. Any termination without cause would obligate Legend to pay Plaintiff $100,000 as severance. Finally, the Agreement allegedly contained a "Choice of Law/Forum" clause providing:

> This Agreement is to be construed and enforced in accordance with the laws of the State of New York, irrespective of the principles of conflicts of law. Any action brought pursuant to this Agreement must be instituted in the federal or state courts of the State of New York.

(Employment Agreement attached to Sandrew Decl., Ex. A, ¶ 10 (June 25, 2009).)

Although Plaintiff's complaint appears to assert that the alleged Agreement was signed by both parties, no signed agreement has been produced. Defendants included a copy of the "proposed" version of the Agreement with their Motion to Dismiss, (Doc. No. 8), which they allege has been supplied by

Gurvey and was never signed by Legend or any of its employees. In her opposition to Defendants' motion to dismiss, Gurvey concedes that the Agreement was never signed.[2] However, she continues to maintain that a valid "contract" existed between the parties. *Id.*

In February of 2002, shortly after allegedly entering into the Agreement, Plaintiff joined the law firm of Cowan, Liebowitz, & Latlaw, P.C. ("Cowan") in an "of counsel" capacity. Under her employment contract with Cowan, however, Plaintiff states that she was permitted to continue working as general counsel to Legend, and Cowan held no rights to her 3% stock interest in Legend.

Ms. Gurvey claims that she continued to perform legal services for Legend through October of 2002. In November of 2002, Mr. Yapp allegedly informed her by phone she was to be terminated without cause. Since then, Yapp has allegedly admitted that the company terminated Plaintiff because it lacked funds to pay her. In September of 2008, however, it was reported that Legend had successfully raised $13 million in venture capital funding.

Plaintiff now claims she still has not been paid the $125,000 salary, stock interest, and $100,000 severance owed to her under the Agreement, as well as for services rendered to individual Defendants prior to the formation of the LLC. The Plaintiff contends that Mr. Yapp allegedly made repeated representations to her that she would be paid under the Agreement that never came to fruition. Moreover, in 2005, the Plaintiff alleges that in order to dissuade her from filing suit for breach of contract, Defendants allegedly offered her 40,000 shares of Legend stock, but did not provide her with requested due diligence documentation, so she was never able to ascertain the value of the offered shares and therefore did not accept Defendants offer.

### III. *Procedural Background*

Plaintiff brought the instant action in the United States District Court for the Southern District of New York on October 29, 2008. On December 8, 2008, Defendants moved to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to transfer the case. Before the New York court could rule on the motion, however, the parties stipulated to the transfer of the action to the United States

---

[2] According to Gurvey, "Although the parties never signed a contract, there was a meeting of the minds about the terms of the contract and plaintiff had in fact performed under, and in reliance upon the contract. The meeting of the minds on the terms is reflected in various documents none of which were ever signed by both parties." (Pl. Opp. to Def. MTD at 4-5.)

District Court for the Southern District of California. The case was transferred to this Court on May 1, 2009. (Doc. No. 1, p. 99-100).

The Plaintiff's complaint stated seven causes of cation against Defendants as follows: (1) the first cause of action is brought in Quantum Meruit against Defendants Sandrew and Yapp for services rendered to these defendants in their capacity as directors of American Film Technologies ("AFT"); (2) the second cause of action is brought in Quantum Meruit against Sandrew and Yapp for services rendered to these individual defendants before the formation of Legend Films; (3) the third cause of action is brought in Qunatum Meruit against Legend Films for services rendered to Legend Films; (4) the forth cause of action is for breach of contract against Legend Films; (5) the fifth cause of action is for breach of contract as to all Defendants; (6) the sixth cause of action is a claim of promissory estoppel against all Defendants; and (7) the seventh cause of action seeks specific performance against Legend Films.

The Defendants filed a motion to dismiss, (Doc. No. 8), which was granted-in-part and denied-in-part by this Court's order of January 4, 2010, (Doc. No. 37). The Court granted Defendants' motion to dismiss the first and second cause of action without leave to amend, finding these claims to be barred by the statute of limitations.

The Plaintiff filed her FAC on March 30, 2011, in which she alleges the following six causes of action: (1) Quantum Meruit against Legend Films; (2) breach of contract against Legend Films; (3) breach of contract as to all Defendants; (4) promissory estoppel against all Defendants;(5) specific performance against Legend Films; and (6) failure to pay wages pursuant to New York labor law section 198 against Legend Films.

The Defendants have filed a motion for summary judgment (Doc. No. 118) on all of the causes of action in Plaintiff's First Amended Complaint ("FAC"), (Doc. No. 78). The Plaintiff filed a cross motion for summary judgment, (Doc. No. 132), seeking a variety of sanctions and summary judgment on the issue of Plaintiff's 3% interest in Legend Films. The Plaintiff filed ex parte applications, (Doc. Nos. 148 and 149), on January 19, 2012 seeking: (1) an extension of time to obtain counsel to file her reply brief, and (2) leave to file an amended complaint. The Plaintiff also filed a motion to vacate a prior stipulation and transfer the case to SDNY for trial, and for an extension of time to file pre-trial

1  documents, (Doc. No. 157). Plaintiff also filed a motion for a stay on the preliminary pre-trial memo
2  and witness lists, (Doc. No. 161).

### *Legal Standard*

4  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as
5  to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A
6  genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a
7  verdict for the non-moving party. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

8  In order to prevail, a party moving for summary judgment must show the absence of a genuine
9  issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense
10 on which the nonmoving party will bear the burden of persuasion at trial. *Nissan Fire & Marine Ins.*
11 *Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party would bear the
12 burden of proof at trial, the moving party may satisfy its burden on summary judgment by simply
13 pointing out to the Court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987.
14 "The moving party need not disprove the other party's case." *Id.*

15 Once the movant has made that showing, the burden shifts to the opposing party to produce
16 "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material
17 fact exists for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC v.*
18 *Gill*, 265 F.3d 944, 954 (9th Cir. 2001)); *see also Miller*, 454 F.3d at 988 ("[T]he nonmoving party must
19 come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v.*
20 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

21 The Court must review the record as a whole and draw all reasonable inferences in favor of the
22 nonmoving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 736, 738 (9th Cir. 2000). However,
23 unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*;
24 *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Thus, '[w]here the record taken
25 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine
26 issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*
27 *Corp.*, 475 U.S. 574, 587 (1986)).

*Discussion*

*I.      Plaintiff's Ex Parte Applications*

As a preliminary matter, the Court will first address the Plaintiff's ex parte applications seeking: (1) an extension of time to obtain counsel and file a reply brief, (Doc. No. 148); (2) leave to file a Second Amended Complaint ("SAC") (Doc. No. 149); (3) the transfer of this case to the Southern District of New York for trial and to vacate orders and further extend pretrial deadlines, (Doc. No. 157).

*A.      Plaintiff's Ex Parte Application for an Extension of Time*

Ex parte applications for extensions of time are proper only if the prescribed time period has not yet expired and if the party can show good cause. Fed. R. Civ. Pro. 6(b)(1)(A). Once the time has expired, a noticed motion for relief, based on a showing of excusable neglect, is required. Fed. R. Civ. Pro. 6(b)(1)(B).

The Plaintiff states in her ex parte applications[3] that she is seeking additional time to find counsel and file a reply brief due to her medical conditions, however, the Plaintiff's application discusses medical conditions[4] that occurred in 2009 through October 2011. *See* Doc. No. 148, pp. 3-6, ¶¶ 1-7. None of the Plaintiff's discussion provides any justification for her failure to timely file her reply brief by the November 28, 2011, deadline. Since the Plaintiff was able to file an opposition to defendants' summary judgment motion and a cross-motion for partial summary judgment[5] on October 22, 2011 and has not articulated any reason or demonstrate good cause for why she could not have timely file a reply brief, the Plaintiff's request for an extension of time is hereby DENIED.

With regard to the Plaintiff's request for additional time to retain new counsel, the Court notes that: (1) the Plaintiff is an experienced attorney; and (2) the Plaintiff has twice in the course of this case

---

[3] In reviewing the Plaintiff's applications, the Court notes that the Plaintiff has incorporated arguments responsive to the Defendants' motion for summary. Despite their untimely nature, the Court will accept and consider these arguments as Plaintiff's reply.

[4] The Plaintiff attached a doctor's note to her application, Doc. No. 148-3, p. 1, however, the doctor's note does not appear to assist Plaintiff with her argument as it indicates only that she was under the care of a doctor on December 29, 2011, and it is dated more than one month after Plaintiff's reply was due.

[5] The Court notes that it accepted the Plaintiff's opposition and cross motion for summary judgment despite the fact that they were filed late and exceed the allowable page limit without leave of Court.

either discharged or refused to communicate with prior counsel, thereby causing counsel to file motions to withdraw, Doc. Nos. 43 and 82.  In light of the Plaintiff's request to substitute herself as counsel in this case in June of 2011, Doc. No. 93, and the Plaintiff's failure to demonstrate any efforts in the preceding months to retain counsel, the Plaintiff's request for additional time to obtain counsel to prepare and file her reply is DENIED.

### B. *Plaintiff's Ex Parte Application for Leave to File a SAC*

The Plaintiff seeks leave to file a SAC to add new allegations and one new cause of action against the current Defendants, as well as David Martin, a Defendant that was previously dismissed by the Court.  The Plaintiff does not allege that these allegations or cause of action are based on newly discovered information.  The Plaintiff states that she became aware of the supposed fraud that forms the basis of her new allegations and cause of action at her deposition on March 23, 2011.  *See* Doc. No. 148, p. 16, ¶ 42-43.  However, the Plaintiff filed her first amended complaint on March 30, 2011, which was one week after her deposition, and did not include the new allegations of cause of action or seek leave shortly thereafter to do so.

The deadline to amend the pleadings set by this Court's scheduling orders was February 22, 2011.  *See* Doc. No. 69.  The Plaintiff has failed to demonstrate good cause for: (1) the delay in requesting amendment; or (2) her failure to follow the rules of this Court requiring Plaintiff to request and obtain a hearing date for motion to amend. Based upon the foregoing and the fact that the Court finds these new allegations and cause of action legally untenable and therefore futile, the Plaintiff's improper, ex parte request seeking leave to amend is hereby DENIED.

### C. *Plaintiff's Motion to Transfer*

This case was transferred to this Court per a joint motion of the parties more than three years ago. (Doc. No. 1, p. 99-100).  In light of the parties stipulation to transfer to this Court and the advanced stage of the litigation, this Court finds a transfer unwarranted and prejudicial as it would cause undue delay.  Accordingly, Plaintiff's motion to transfer is DENIED.

## II. *The Motions for Summary Judgment*

There are two motions for summary judgment presently before the Court, the Defendants' motion for summary judgment, Doc. No. 118, and the Plaintiff's cross-motion for summary judgment,

Doc. No. 132. The Defendants' motion seeks summary judgment or, in the alternative, partial summary judgment or, an order specifying material facts not in dispute pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Defendants argue that the Plaintiff's causes of action are barred by the statute of limitations because any alleged agreement ended when plaintiff went to work at Cowan, Liebowitz & Latlaw, P.C. ("Cowan") in or about February 2002.

Alternatively, the Plaintiff's cross-motion for summary judgment seeks Rule 11 sanctions, as well as other sanctions in the form of leave to file an amended pleading, attorney's fees, denial of the Defendants' motion for summary judgment and unconditional issuance of 3% of the shares of Defendant Legend's stock.

### A. All of Plaintiff's Claims Are Time-Barred by the Statute of Limitations

The Plaintiff alleges in her FAC that she entered into a contract with Defendants on November 15, 2001. (FAC, ¶ 20.) Plaintiff claims that the terms of the contract entitled her to a 3% share in Legend, as well as compensation at the rate of $125,000 per year. *Id.* Although Defendants emphatically dispute that any contract was ever formed (as more fully discussed below), even if a contract was formed, Defendants argue that the Plaintiff breached the contract, and/or the contract ended by mutual consent, shortly thereafter in February of 2002.

The Defendants contend that the accrual date for the Plaintiff's claims is the date that the Plaintiff went to work full-time at Cowan in February 2002, because on that date, the Defendants contend that the Plaintiff either breached the alleged employment agreement with Defendants or the parties mutually consented to terminate the agreement. The Defendants argue that because the Plaintiff did not filed her complaint in the Southern District of New York until October 29, 2008, the six year statute of limitations on the Plaintiff's claims has already run and the Plaintiff is precluded from recovering the 3% share in Legend and compensation at the rate of $125,000 per year.

Accepting Plaintiff's factual allegations as true, the contract was breached in November 2002, while Plaintiff filed her Complaint in October 2008. However, Plaintiff's assertions are without merit. The statute of limitations issue was decided by Judge Gonzalez in a previous motion. *See* Doc. No. 37. Judge Gonzalez determined that New York had personal jurisdiction over Defendants and, therefore, New York choice of law rules should be applied. *Id.* at 16:7-8. New York follows the "traditional

definition of accrual–a cause of action accrues at the time and in the place of injury. *Id.* at 19:4-5 citing *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999). Judge Gonzalez determined that Plaintiff's causes of action all accrued in New Jersey, as Plaintiff was a New Jersey resident in October 2002. *Id.* at 19:8-9.

All six of Plaintiff's claims have a six-year statute of limitations. *See* N.J. Stat. An. §2A:14-1; *see also Iwanowa v. Ford Motor Co.*, 67 F.Supp. 2d 424, 473 (D.N.J. 1999) (citing *Miller v. Bd. of Chosen Freeholders of Hudson County*, 10 N.J. 389, 409 (1952) (applying the six year statute of limitations to "claims sounding in restitution/unjust enrichment or quantum meruit")).[6]

Defendants allege, and this Court agrees, that if any contractual relationship ever existed, that relationship was terminated in February of 2002 when Plaintiff began working at Cowan law firm. By starting work at Cowan, any alleged contract between plaintiff and defendants came to an end, as Plaintiff either breached the alleged agreement or the parties terminated the alleged agreement by mutual consent. *Lubliner v. Helmsley-Spear, Inc.*, 642 N.Y.S.2d 240, 241 (1996) ("It is settled that where an employee under contract agrees to change positions, the previous employment contract comes to an end[.]"); *Prillaman v. Century Indemnity Co. of Hartford*, Conn., 138 F.2d 821, 823 (4th Cir. 1943) ("It is well established that the right to terminate contract by mutual consent exists independent of any provision in the contract permitting the parties to do so[.]").

Plaintiff argues that the statute of limitations should be tolled with respect to the quantum meruit claim because of the alleged reassurances by Defendants that she would eventually be payed. However, this exact argument was already rejected by Judge Gonzalez. (Doc. No. 37, p. 22:20-26). Judge Gonzalez cited the Third Circuit in *Baer* which stated "[t]he essence of a quasi-contract claim is not the expectancy of the parties, but rather the unjust enrichment of one of them." 392 F.3d at 622. As a result, Judge Gonzalez concluded, it would be "inappropriate" to look at Plaintiff's expectations of payment, rather than the services she provided to Defendants. *See id.* (Noting that the plaintiff's belief

---

[6] Judge Gonzalez also noted that even if the pro-resident section of New York's borrowing statute applied, the result would be the same. Similar to New Jersey, New York would apply a six-year statute of limitations to all of Plaintiff's claims. *See* N.Y. C.P.L.R. §213.2 (applying a six-year statute of limitation to all actions "upon a contractual obligation or liability, express or implied," except for several exceptions not applicable here); *see also Cohen v. City Co. of New York*, 283 N.Y. 112 (1940) (applying the six-year statute of limitations to a quantum meruit claim). Doc. No. 37, p. 19:10-14, fn. 17.

"that he was going to get paid if and when the show was a success" was irrelevant). Plaintiff stopped providing services to Defendants in her individual capacity in February 2002 and all of her clients became clients of the Firm per her employment agreement she executed with the Firm upon accepting an of counsel position in February of 2002. (Doc. No. 118-1, p. 4:4-8). Any alleged reassurances by Defendants cannot defeat the statute of limitations for this claim.

Accordingly, the statute of limitations began to run at the latest in February 2002. *Schmidt v. McKay*, 555 F.2d 30, 36 (2d Cir. 1977) (promissory estoppel claim accrues at the time of the promise); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (breach of contract claim accrues at time of breach); *Franconia Associates v. United States*, 536 U.S. 129, 142 (2002) (same). Furthermore, to the extent any such contract includes the stock options, Plaintiff contends those were due to her "immediately" in January 2002. (Doc. No. 118-1, p. 10). By Plaintiff's own admission, therefore, any claim related to the stock options accrued in January 2002. Plaintiff filed the instant action on October 28, 2008; at least eight months after the statute of limitations had run on all claims. Based upon the foregoing, Plaintiff's claims one through six are time-barred and Defendants' motion for summary judgement is GRANTED as to these claims.

### B. *Even if the Plaintiff's Claims Were Not Time-Barred, These Claims Fail as a Matter of Law*

#### 1. *Plaintiff's Claim for Quantum Meruit Fails as a Matter of Law*

To prove a claim for quantum meruit, the Plaintiff must show: (1) performance of services in good faith; (2) acceptance of services by the person to whom they are rendered; (3) expectation of compensation therefore; and (4) reasonable value of services rendered. *Evans-Freke v. Showcase Contracting Corp.*, 926 N.Y.S.2d 140, 141 (2011); *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437-38 (1992); *Liddle & Robinson, LLP v. Garrett*, 720 F.Supp.2d 417, 422 (S.D.N.Y. 2010). Plaintiff's claim fails for the following reasons: (1) Legend paid her for the performance of her services, as did her employer Cowan; and (2) Plaintiff had no expectation of compensation.

Plaintiff was paid $10,000 by Legend for the services she performed prior to February of 2002 when she commenced employment with Cowan. (Doc. No. 118-1, p. 17:14-20). Shortly thereafter, Plaintiff began working for Cowan where her compensation included payment for work provided to

1  Legend. *Id.* at 17:23-24. As such, the Plaintiff has already been reasonably compensated for the work
2  she performed for Defendants. Plaintiff conceded that any work she performed for Defendants after
3  commencing working at Cowan was "included in [her] stock interest." *Id.* at 17:27. Therefore, to the
4  extent Plaintiff argues she performed services for Legend after her employment at Cowan ended, she
5  admits that she did not expect any compensation for those services. *Id.* at 18:1-2. In fact, the contract
6  that she entered into with Cowan expressly stated that any payment she received from her clients
7  belonged to the firm. (Doc. No. 118-1, p. 4:4-8). Plaintiff was also receiving compensation from
8  Cowan for her work at the firm, which included work for the Defendants. This salary was verified in a
9  contractual dispute between Plaintiff and Cowan. *See Gurvey v. Cowan, Leibowitz & Latman*, PC, 06-
10 cv-1202 (BSJ)(SDNY); 2d Cir. Consolidated Appeal Nos. 9-2185; 10-4111 (February 10, 2012).

11     Plaintiff has failed to raise an issue of material fact regarding her claim for quantum meruit.
12 Even if this claim were to survive the statute of limitations, it fails on the merits. Accordingly, summary
13 judgment is GRANTED in favor of Defendants on Plaintiff's quantum meruit claim.

### 2. *Plaintiff's Breach of Contract Claims Against Legend Films and Individual Defendants*

16     Plaintiff's second and third causes of action are for breach of contract against Legend Films and
17 the individual Defendants. Here, Plaintiff cannot prove that a contract existed between the parties, and
18 even if it did, the claim is barred by the statute of frauds. Additionally, if the parties entered into any
19 agreement, such an agreement would be in violation of the professional rules of conduct and
20 unenforceable.

#### a. *No Contract Existed Between the Parties*

22     To recover for a breach of contract, a plaintiff must prove: (1) the existence of a contract; (2) the
23 plaintiff's performance under the contract; (3) the defendants breach under the contract; and (4)
24 resulting damages. *JP Morgan Chase v. J.H. Elec. of New York*, 893 N.Y.S.2d 237, 239 (2010);
25 *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F.Supp.2d 831, 833 (D.N.J. 2006). A
26 party seeking to enforce the contract has the burden of proving a valid and enforceable contract existed.
27 *Allen & Company v. Occidental Petroleum Corp.*, 382 F. Supp. 1052, 1055 (S.D.N.Y. 1974). Here,
28

Plaintiff cannot show that a valid contract existed between her and any of the corporate or individual defendants.

First, there is no dispute that the parties never entered into a written agreement. (Doc. No. 118-1 p. 14:15-16; Gurvey depo. 160:14-16). Although Plaintiff provided Legend with a proposed contract, that contract was never signed. *Id.* at 14:16-17. In New York, "unsigned writings prepared by a plaintiff, without more, do not suffice to bind a defendant." *Karlin v. Avis*, 457 F.2d 57, 62 (2d Cir. 1972). Even if Plaintiff alleges the formation of an oral agreement, that argument cannot survive summary judgment because Plaintiff cannot show that there was any meeting of the minds as to the material elements of the contract.

Contract formation requires an offer, acceptance, and consideration. *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F. Supp. 606, 610 (S.D.N.Y. 1995). The formation of a contract also requires that at least two parties mutually assent to the material terms of the contract. *International Paper Co. v. Suwyn*, 966 F. Supp. 246, 254 (S.D.N.Y. 1997) (contract enforceable under New York law only if there is a "meeting of the minds between the parties regarding the material elements of the agreement."). A mere agreement to agree renders the contract unenforceable. *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 840 (2d Cir. 1993) ("[A] purported contract that leaves the compensation term to be determined by future negotiations is a mere 'agreement to agree,' and under New York law is deemed too indefinite to be enforceable.").

In the instant case, the Court finds that there was no meeting of the minds as to the material terms of the alleged agreement such as dilution of the stock options, the amount and the vesting period. The Plaintiff acknowledges disagreement over the material terms of the offer to provide her shares in Legend. (Doc. No. 118-1, p. 14:23-24). The Plaintiff's complaint explains that "shares were not to be issued with any required vesting period. The parties never agreed that the shares would or could be diluted." (Doc. No. 78, p. 7:12-17.) However, dilution is the standard practice at Legend. (Doc. No. 118-1, p. 15:3). Every common share of stock at Legend since its inception, including the shares belonging to Legend's founders, have been subject to dilution. *Id.* at 15:4-6. Such a significant deviation from the norm would lend itself to said terms being in writing. Plaintiff cannot demonstrate and has failed to offer any evidence to dispute the fact that no meeting of the minds occurred with

respect to Plaintiff's alleged entitlement to stock options. Based upon the foregoing, the Court finds that the Plaintiff has failed to demonstrate as a matter of law that there was a meeting of the minds as to material elements of the alleged Agreement to issue a 3% interest in Legend's stock .

### b. *Plaintiff's Claim for Breach of Contract is Barred By the Statute of Frauds*

The statute of frauds provides that any agreement is void if, "[b]y its terms [it] is not to be performed within one year from the making thereof" unless that agreement is in writing and 'subscribed by the party to be charged therewith." N.Y. Gen. Oblig. Law 5-701; *City of Yonkers v. Otis Elevator Company*, 649 F. Supp. 716, 726 (S.D.N.Y. 1986).[7] Plaintiff's FAC alleges that she had an agreement to work for Legend "for an initial term of two (2) years commencing January 1, 2002." (Doc. No. 78, p.7:4-5). This agreement could not have been completed within a year and therefore falls within the statute of frauds. Because defendants never signed the alleged Agreement with Plaintiff, any claim for breach of the alleged Agreement is barred by the statute of frauds.

Plaintiff refers in her opposition to a series of emails exchanged between her and Defendants throughout the time period. Plaintiff does not allege these emails comprise the contract, but merely that they refer to an understanding previously established by the parties. However, none of these emails discuss the specifics of any contract, nor do they outline any material terms necessary to create a valid contract. Such writings are not sufficient to establish the elements of a valid contract or survive the statute of frauds. The statute of frauds exists to protect against such understandings forming the basis of valid contracts as a means of preventing fraud in legal transactions particularly susceptible to deception, mistake and perjury. *Shaftel v. Dadras*, 39 F.Supp.2d 217, 228 (1999). Contracts for a period greater than one year is such a context. Thus, any alleged contract is unenforceable due to the statute of frauds.

### c. *Plaintiff's Alleged Contract With Legend Violated the Rules of Professional Conduct, And Is Unenforceable*

The Rules of Professional Conduct in California, New Jersey and New York all require Plaintiff to advise Legend to seek independent counsel before entering into a business transaction with them

---

[7] New York law applies because Plaintiff alleges the agreement was made while she lived there. N.Y. Gen. Oblig. Law 5-701 (focused on "the making" of an agreement; FAC, ¶20 (alleged agreement formed in November 2001); Doc. No. 37, p. 18-19 (noting that Plaintiff resided in New York until April 2002).

whereby she would acquire an ownership interest in the company.  Plaintiff was also required to obtain Legend's written consent to any arrangement resulting in her having an ownership interest in the company.

> A lawyer may not enter into a business transaction with a client or knowingly acquire an ownership . . . or other pecuniary interest unless; (1) the transaction and terms in which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner and terms that should have reasonably been understood by the client; (2) the client is advised of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction; and (3) the client consents in writing thereto.

N.J. Rules of Prof. Conduct, Rule 1.8; *see also* N.Y. Rules of Prof. Conduct, Rule 1.8; Cal. Rules of Prof. Conduct, Rule 3-300.  Plaintiff conceded there was no signed writing between the parties.  Furthermore, the Plaintiff has failed to produce any writing indicating that she advised Defendants to seek counsel or that they subsequently consented to the grant of stock options to the Plaintiff.

Additionally, the Rules of Professional Conduct in all relevant states further obligate the Plaintiff to communicate the basis, rate and fees to the Defendants in writing.  N.J. Rules of Prof. Conduct, Rule 1.5(b); N.Y. Rules of Prof. Conduct, Rule 1.5(b).  Defendants allege and Plaintiff fails to offer any proof that she did so.  Indeed, Plaintiff admits to never having received a retainer agreement from Defendants at any point. (Doc. No. 118-1, p. 11: 20-21).

Therefore, even if a contract existed between the parties, the contract would be unenforceable as it violates the rules of professional conduct.  *Raphael v. Shapiro*, 587 N.Y.S.2d 68, 72 (1992) (violation of the Rules of Professional Conduct rendered contract void and unenforceable; plaintiff should not be permitted to reap the benefits of a void and unenforceable contract); *Ford v. Albany Medical Center*, 724 N.Y.S.2d 795, 797 (2001) (contract unenforceable because attorney violated the Code of Professional Responsibility); *City of New York v. 17 Vista Associates*, 599 N.Y.S.2d 549, 553 (1993) ("Contracts contrary to public policy are unenforceable and courts will not recognize rights purportedly arising from them.")

For all of the above mentioned reasons, summary judgement is GRANTED in favor of Defendants on Plaintiff's second and third causes of action for breach of contract.

### 3. *Plaintiff's Claims of Promissory Estoppel Against All Defendants*

Plaintiff's fourth cause of action for promissory estoppel against all Defendants fails even if the claim is not time barred because the individual Defendants never provided a clear and unambiguous promise to her and the Plaintiff has already been compensated for her work at Legend.

To establish a claim for promissory estoppel a plaintiff must prove: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained in reliance on the promise. *Rogers v. Town of Islip*, 646 N.Y.S.2d 158, 158 (1996); *Peck v. Imedia, Inc.*, 293 N.J. Super. 151, 165 (1996); *Roberts v. Karimi*, 204 F. Supp.2d 523, 527 (E.D.N.Y. 2002). Here, Plaintiff cannot prove that there was a clear and unambiguous promise from either one of the individual defendants or that she suffered an injury. In fact, Plaintiff conceded that there was ambiguity with the alleged promise. (Doc. No. 118-1, p. 18:23-24 [Gurvey depo. 199:16-200:2]). Moreover, Plaintiff received $10,000.00 for services performed from Legend and an additional salary from Cowan. *Id.* at 19: 3-4; [Gurvey Depo. 177:10-18]. She already received compensation for her work both by Legend and by Cowan and thus has not been injured by any reliance on the promise. Accordingly, Plaintiff cannot prove the necessary elements of the claim for promissory estoppel.

Based upon the foregoing, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's fourth claim for promissory estoppel.

### 4. *Plaintiff's Claims for Specific Performance Against Legend Films*

Plaintiff's fifth cause of action is for specific performance against Defendant Legend Films. Because Plaintiff cannot establish the existence of a contract (as discussed above), she cannot compel specific performance. Furthermore, Plaintiff's claim for specific performance is barred by the doctrine of laches. "The defense of laches, in a suit for specific performance, is to be considered wholly independent of the Statute of Limitations." *Richardson v. Vajiradhammapadip Temple*, 807 N.Y.S.2d 392, 392 (2005); *Lavin v. Board. of Educ. of City of Hackensack*, 90 N.J. 145, 151 (1982). "Unexplained delay is evidence of waiver an acquiescence in non-performance." *City of New York v. New York Cent. R.R. Co.*, 275 N.Y. 287, 293 (1937). "Although the action is brought within the period prescribed by the statute, it may have been delayed as to preclude the granting of equitable relief" if the defendant can show the plaintiff is guilty of an unreasonable, prejudicial delay. *Richardson*, 807

N.Y.S.2d at 393; *Lavin*, 90 N.J. at 152-53; *see also Cantrell v. Hayduck*, 45 N.Y.2d 925, 927 (1978) (under doctrine of laches, delay of approximately two months can bar claim).

In terms of the stock options, Plaintiff claims that Legend should have provided her with shares of stock in January 2002. (FAC ¶20(d)(I) [noting that the alleged agreement commenced in January 2002 with "Class B shares (600) to be due, owing, and payable immediately for past services"].) Plaintiff alleged that she performed services for Legend after she left to work at Cowan, but later conceded that work was part of her supposed agreement for shares in January 2002. (Doc. No. 118-1, p. 16:18-19). Any salary claims arose at the latest in February of 2002, yet Plaintiff waited until October 2008 to file this lawsuit. In the meantime, Legend has operated its business, and sought financing for its business, with representations of its ownership that did not include Plaintiff. *Id.* Therefore, laches bars Plaintiff's claim for specific performance.

### 5.     *Plaintiff's Claim for Violation of New York Labor Law Section 198*

Plaintiff's sixth claim is for failure to pay wages under New York labor law section 198. New York Labor Law, Article 6, which governs an employers payment of wages and benefits to an employee, defines an employee as "any person employed for hire by an employer in any employment." New York Labor Law §190(2). This definition excludes independent contractors. *Akgul v. Prime Time Transportation*, 741 N.Y.S.2d 553, 556 (2002).

#### a.     *Plaintiff was Not Employed at Legend*

When determining whether an employer-employee relationship exists, the critical inquiry is the degree of control exercised by the purported employer over the results produced or the means used to achieve those results. *Bhanti v. Brookhaven Memorial Hospital Medical Center, Inc.*, 687 N.Y.S.2d 667, 669 (1999); *Bynog v. Cipriani Group Inc.*, 770 N.Y.S.2d 692, 695 (2003); *Barry & Sons, Inc. v. Instinct Productions LLC*, 783 N.Y.S.2d 225, 235 (2004) (reversed, in part, on other grounds). The factors relevant in assessing such control include whether the worker: (1) worked at her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employers payroll; and (5) was on a fixed schedule. *Bynog*, 770 N.Y.S.2d at 695; *Barry & Sons, Inc.*, 783 N.Y.S.2d at 235.

Here, the Court finds for the following reasons that the Plaintiff was not employed by Legend. First, Plaintiff worked at her own convenience, (Doc. No. 118-1, p. 20) and Legend did not supervise her work or work product, but simply received her work product when it was finished. *Id.* at 20:5. Second, Plaintiff was not only free to engage in other employment, she did engage in other, full-time and exclusive employment. Plaintiff started working for Cowan in February of 2002, (FAC ¶25), and was paid a full salary from Cowan, awarded in a lawsuit judgment in Plaintiff's favor. (Doc. No. 118-1, p. 20:20-23). This salary included payment for services rendered to Legend. *Id.* at 20:23-24. Third, Plaintiff did not receive any benefits during the period that she performed work for Legend and was never on Legend's payroll. *Id.* at 20:3-12. Plaintiff admits she never received a paycheck from Legend, although she did receive a lump sum payment in the form of $10,000.00. *Id.* at 12-14. Finally, Plaintiff did not work on a fixed schedule, but was responsible for completing tasks at her convenience. *Id.* at 20:4-5. Based upon the foregoing, the Court finds that the Plaintiff cannot establish that she was employed by Legend. Accordingly, summary judgment is GRANTED for Defendants on the Plaintiff's sixth cause of action.

### *b.   Summary Judgment is Appropriate Regardless of the Choice of Law*

In Defendant's previous motion to dismiss, Judge Gonzalez determined that New Jersey law should be applied to Plaintiff's claims because Plaintiff was a New Jersey resident when the claims arose in October of 2002. (Doc. No. 37, p. 19:8-11). Plaintiff cannot continue to assert a claim based on New York law if the Court has already determined that this claim is governed by New Jersey law. Accordingly, summary judgment is GRANTED as to Plaintiff's claim for failure to pay wages under New York's labor law.

Even if Plaintiff were to convince this Court that New York law should govern her claim, summary judgment is still appropriate. Plaintiff last resided in New York in April 2002 and the statute of limitations for this cause of action is six years. *See* N.Y. Lab. Law §198 ("Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years.") Plaintiff did not file this cause of action until October 2008 and thus her claim is barred by the statute of limitations.

### *Conclusion*

For the reasons set forth above, the Court rules as follows on the pending motions.

    1) Plaintiff's ex parte applications, (Doc. Nos. 148 and 149), are DENIED;

    2) Plaintiff's motion for transfer and for extension of time to file pre-trial documents, (Doc. No. 157), is DENIED;

    3) Plaintiff's motion to stay preliminary pre-trial memo and witness list (Doc. No. 161), is DENIED AS MOOT;

    4) Defendants' motion for summary judgment, (Doc. No. 118), is GRANTED;

    5) Plaintiff's cross motion for summary judgment, (Doc. No. 132), is DENIED.

IT IS SO ORDERED.

DATED: September 14, 2012

                                                      Hon. Anthony J. Battaglia
                                                      U.S. District Judge